United States District Court
District of Maine

| | |
|---|---|
| RAYMON DUPUIS, as Representative of the Estate of Adam Dupuis | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 04-10-B-H ) |
| MARTIN MAGNUSSON, et al., | ) ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT
(Docket No. 112) FILED BY DEFENDANT AUGUSTUS RUGGIERI**

Raymond Dupuis brought this civil action seeking redress from multiple defendants associated with the Maine State Prison after his son, Adam Dupuis, committed suicide at the prison. One of those defendants, Officer Augustus Ruggieri has filed a motion for summary judgment (Docket No. 112). On January 4, 2008, I held a telephone conference to discuss Dupuis's responsive statements of fact pertaining to a host of dispositive motions filed by different defendants. (See Docket No. 127.) During that conference Dupuis's counsel indicated that he would not be opposing the dispositive motions of Commissioner Martin Magnusson, Officer Fred Knight, and Officer Augustus Ruggieri. Dupuis, thereafter, never responded to Ruggieri's dispositive motion. I recommend that the Court grant Ruggieri's motion for summary judgment,

*Discussion*

*The Summary Judgment Standard*

Ruggieri is entitled to a favorable summary judgment order only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that [Ruggieri is] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If he meets this burden this court will grant the summary judgment motion unless the opposing party's presentation generates a genuine issue as to the presence or absence of material fact or facts; that is, that the evidence in the record is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). In evaluating whether a genuine issue is raised, the Court must view all facts in the light most favorable to Dupuis and give him the benefit of all reasonable inferences. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000); see also Scott v. Harris, __ U.S. __, __, 127 S. Ct. 1769, 1776 (2007). However, because Dupuis has failed to place a single one of the defendant's facts in dispute I deem the properly supported facts as admitted. See Faas v. Washington County, 260 F. Supp. 2d 198, 201 (D. Me. 2003).

*Deliberate Indifference Standard*

In Manarite By and Through Manarite v. City of Springfield, the First Circuit described the Eighth Amendment deliberate indifference standard for prison suicide cases:

> The Supreme Court has made clear that Section 1983 permits recovery for loss of life (or for serious physical harm) only where the defendant acts intentionally or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. Wilson v. Seiter, 501 U.S. 294 (1991) ("deliberate indifference" standard in Eighth Amendment prison conditions case); Canton v. Harris, 489 U.S. 378, 388-90 (1989) (same in Fourteenth Amendment municipal liability, police denial of medical treatment case); Estelle v. Gamble, 429 U.S. 97, 104-06 (1976) (same in Eighth Amendment prison medical treatment case).
> The Supreme Court has also made clear that, by "deliberate indifference," it means more than ordinary negligence, and probably more than gross negligence. Canton, 489 U.S. at 388 n. 7 ("some [lower] courts have held that a showing of 'gross negligence'" is adequate, "[b]ut the more common rule is ... 'deliberate indifference'" ); Daniels v. Williams, 474 U.S. 327, 328 (1986) (civil rights laws do not permit recovery based on simple negligence).

2

> Although some courts have used language suggesting that the deliberate indifference standard includes simple negligence- see, e.g., Elliott v. Cheshire County, 940 F.2d 7, 10-11 (1st Cir.1991) (defendant "reasonably should have known" of detainee's suicidal tendencies)-in their application of the deliberate indifference standard, courts have consistently applied a significantly stricter standard. In DeRosiers v. Moran, 949 F.2d 15 (1st Cir.1991), for example, this court stated that deliberate indifference requires
>> the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain ... While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge [or wilful blindness] of impending harm, easily preventable.
>
> Id. at 19 (citations omitted); Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir.1990) (standard of "'reckless' or 'callous' indifference" for supervisors' liability), cert. denied, 500 U.S. 956 (1991); Walker v. Norris, 917 F.2d 1449, 1455-56 (6th Cir.1990) ("deliberate indifference" standard in supervisory liability case); Berry v. Muskogee, 900 F.2d 1489, 1496 (10th Cir.1990) (same); Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir.1989) (same).
>
> The cases also indicate that, when liability for serious harm or death, including suicide, is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.

957 F.2d 953, 955 -56 (1st Cir. 1992); accord 966 F.2d 13, *17 (1st Cir. 1992); see also Farmer v. Brennan, 511 U.S. 825 (1994).

*Undisputed Material Facts*

The Defendant, Augustus Ruggieri was a correctional officer for the Department of Corrections from 1992 until 2002. (SMF ¶ 1.)  Ruggieri was posted at the Special Management Unit, specifically the Mental Health Unit of the Maine State Prison. (Id. ¶ 2.) On the day of Adam Dupuis's suicide, May 6, 2002, Ruggieri was working the day shift.  (Id. ¶ 3.)

As part of his employment at the Mental Health Unit, Ruggieri had received some training but did not consider that he had specialized training or knowledge with regard to mental health disorders, diagnosis, management, or treatment.  (Id. ¶ 4.)  As a correctional officer, Ruggieri was not expected to form opinions or make diagnosis.  (Id. ¶ 5.)

Prior to May 6, 2002, Ruggieri had had no discussions with psychiatrists, psychologists, or others on the Mental Health staff at the Mental Health Unit with regard to any specific problem being experienced by Adam Dupuis. (Id. ¶ 6.)  Prior to May 6, 2002, Ruggieri had no knowledge of medications that had been prescribed for Adam Dupuis, nor did he have any knowledge of what medications Adam sought to have prescribed for him (Id. ¶ 7.)  Prior to May 6, 2002, Ruggieri had no knowledge with regard to the specific mental health problems nor suicidal thoughts or attempts undertaken by Adam. (Id. ¶ 8.)  Ruggieri, as a correctional officer, did not participate in medical decisions regarding the mental health treatment for Adam.  (Id. ¶ 9.) Ruggieri had no participation in the decision of where within the Mental Health Unit Adam would be placed. (Id. ¶ 10.)

Prisoners in the stabilization or transitional wing of the Mental Health Unit were allowed to maintain their belt and shoe laces. (Id. ¶ 11.) More than one correctional officer is posted at the Mental Health Unit so that desk duties, counts, safety checks, etc. can be done at the same time. (Id. ¶ 12.)  Adam Dupuis was in the transition or stabilization unit on the day he died.  (Id. ¶ 13.) Ruggieri did not participate in the decisions regarding what items would be allowed to Adam in his cell. Specifically, Ruggieri had no participation in the decision that allowed Adam to have access to a belt and/or shoelaces. (Id. ¶ 14.)

It was the standard practice of the Mental Health Unit to have at least two correctional officers on duty at all times. (Id. ¶ 15.)  The correctional officers posted to the Mental Health

Unit are responsible for checks of prisoners every thirty minutes in Mr. Dupuis's area, but these to be staggered within each one-half hour. (Id. ¶ 16.) Mr. Dupuis was to be observed once during each thirty-minute interval. (Id. ¶ 17.)

Ruggieri conducted a prisoner count at 11:20 a.m. (Id. ¶ 18.) At approximately 1:08 p.m. the prisoner's cells were opened. (Id. ¶ 19.) Ruggieri responded to Adam Dupuis's cell when prisoners discovered Adam hanging in his cell. (Id. ¶ 20.) Ruggieri and other correctional officers called for assistance, including medical personnel. (Id. ¶ 21.) The medical team summonsed by the correctional officers arrived almost immediately after Adam was discovered and the call was made. (Id. ¶ 22.)

On May 6, 2002, Ruggieri was the only correctional officer on duty at the Mental Health Unit for approximately one and one-half hours around noontime. (Id. ¶23.) Ruggieri never observed the paper covering the window of Adam's cell nor did he know when that paper was placed over the window. (Id. ¶ 24.) Ruggieri never heard loud music coming from Adam's cell. (Id. ¶ 25.)

Once the medical team arrived at Adam's cell he was provided CPR, oxygen, and he was intubated. (Id. ¶ 26.) Little time elapsed between the time Ruggieri first saw Adam on the floor and when the medical team arrived. (Id. ¶ 27.) Ruggieri did not instruct any prisoners to stop performing CPR on Adam Dupuis. (Id. ¶ 28.)

The plaintiff's psychiatric expert, Dr. Shawn Wilson, MD testified that in her opinion if Adam had been on a schedule of checks at fifteen- minute intervals this would not have been sufficient to prevent his suicide because, in Dr. Wilson's opinion, even fifteen minutes is sufficient time for a person to commit suicide. (Id. ¶ 29.) The plaintiff has designated no experts

to testify that there was any causal connection between any asserted lack of CPR or treatment by correctional officers and the death of Adam Dupuis. (Id. ¶ 30.)

Ruggieri has set forth facts that demonstrate that he is entitled to judgment as a matter of law under the deliberate indifference standard set forth in Manarite By and Through Manarite. Dupuis has expressly elected not to attempt to generate a genuine dispute to defeat summary judgment and, accordingly, I recommend that the Court grant Ruggieri's motion for summary judgment (Docket No.112).

## *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive NOTICE memorandum shall be filed within ten (10) days after the filing of the objection.
      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

February 15, 2008.   /s/Margaret J. Kravchuk
                                                 U.S. Magistrate Judge